# EXHIBIT "A"

## ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

FHA Case No. ▮▮▮▮▮▮▮▮

NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE
INTEREST RATE. THIS NOTE LIMITS THE MAXIMUM RATE I MUST PAY.

SEPTEMBER 09, 2008
228 HAWTHORNE ROAD
MORTON, PA  19070

[Property Address]

**1. DEFINITIONS**
"Borrower" means each person signing at the end of this Note. "Lender" means
WELLS FARGO BANK, N.A.

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban
Development or his or her authorized representatives.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the
terms of a Home Equity Conversion Loan Agreement dated          09/09/08 ("Loan
Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum
of all Loan Advances made under the Loan Agreement with interest. Interest will be charged on
unpaid principal at the rate of THREE AND 580/1000
                            percent (          3.580 %) per year until the full amount
of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this
Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each
month.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument
that is dated the same date as this Note and called the "Security Instrument." That Security
Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
    (A) Time
    Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a
notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.
    (B) Place
    Payment shall be made at WELLS FARGO BANK, N.A.

3480 STATEVIEW BLVD.  MAC X7802-038

FORT MILL, SC 29715-7203                    800-472-3209          , or any
such other place as Lender may designate in writing by notice to Borrower.
    (C) Limitation of Liability
    Borrower shall have no personal liability for payment of the debt. Lender shall enforce the
debt only through sale of the Property covered by the Security Instrument ("Property"). If this
Note is assigned to the Secretary, the Borrower shall not be liable for any difference between
the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including
accrued interest, owed by Borrower at the time of the assignment.

**5. INTEREST RATE CHANGES**
    (A) Change Date
    The interest rate may change on the first day of DECEMBER   2008        , and on  ☐ that
day of each succeeding year   ☒ the first day of each succeeding month. "Change Date"
means each date on which the interest rate could change.
    (B) The Index
    Beginning with the first Change Date, the interest rate will be based on an Index. "Index"
means the weekly average yield on United States Treasury Securities adjusted to a constant
maturity of one year, as made available by the Federal Reserve Board. "Current Index" means
the most recent Index figure available 30 days before the Change Date. If the Index (as defined
above) is no longer available, Lender will use as a new Index any index prescribed by the
Secretary. Lender will give Borrower notice of the new Index.
    (C) Calculation of Interest Rate Changes
    Before each Change Date, Lender will calculate a new interest rate by adding a margin of
ONE AND ONE-HALF
percentage points (          1.500 %) to the Current Index. Subject to the limits
stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next
Change Date.
    (D) Limits on Interest Rate Changes
    ☐ The interest rate will never increase or decrease by more than two percentage points
(2.0%) on any single Change Date. The interest rate will never be more than five percentage
points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.
    ☒ The interest rate will never increase above THIRTEEN AND 580/1000
                            percent (          13.580%).
    (E) Notice of Changes
    Lender will give notice to Borrower of any change in the interest rate. The notice must be
given at least 25 days before the new interest rate takes effect, and must set forth (i) the date
of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the
Current Index and the date it was published, (vi) the method of calculating the adjusted interest
rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees; Third, to that portion of the principal balance representing accrued interest due under the Note; and Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the
Secretary makes payments to Borrower, then Borrower shall not:
(i) Be required to pay amounts owed under this Note until the Secretary has required
payment in full of all outstanding principal and accrued interest under the Second Note held
by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or
(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether
accrued before or after the payments by the Secretary, and whether or not accrued interest
has been included in the principal balance of this Note, notwithstanding anything to the
contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

**12. SHARED APPRECIATION**

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall
be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this
Note.

**13. GOVERNING LAW**

All interest, fees and other amounts charged or accruing in connection with this Note which
are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC ½ 85;
12 CFR 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other
respects, this Note and all related documents, as well as the rights, remedies, and duties of the
Bank and the borrower(s), shall be governed and interpreted by federal law with respect to national
banks and, to the extent not preempted by federal law, the consumer protection laws of the state in
which the real estate is located, except that Texas Finance Code Chapter 346 (which regulates
certain revolving credit accounts) does not apply to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Note.

_____    (Seal)
SUZANNE G PAPARO                                                -Borrower


_____    (Seal)
                                                               -Borrower


_____    (Seal)
                                                               -Borrower


_____    (Seal)
                                                               -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____
JOANM M. MILLS, VICE PRESIDENT

Page 3 of 3

# EXHIBIT "B"

This Document Prepared By: Sarah Fawcett
WELLS FARGO BANK, N.A.

, MAC M6964-012
WEST CHESTER, OH 450690000

RECORD & RETURN TO:
SETTLEMENT SOLUTIONS
1001 BALTIMORE PIKE
SPRINGFIELD, PA 19064
SUITE 211

When Recorded Mail To:     ~~WHEN FINAL DOCS~~ X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

Parcel No:

_____ [Space Above This Line For Recording Data] _____

Commonwealth of Pennsylvania     FHA Case No

## ADJUSTABLE RATE
## HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on     09/09/08 . The
mortgagor is SUZANNE G PAPARO, A SINGLE PERSON

whose address is 228 HAWTHORNE ROAD, MORTON, PA   19070

("Borrower"). This

Security Instrument is given to WELLS FARGO BANK, N.A.

which is organized and existing under the laws of THE UNITED STATES
and whose address is
P.O. BOX 11701
NEWARK, NJ                                              ("Lender"). Borrower
has agreed to repay to Lender amounts which Lender is obligated to advance, including future
advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as
this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's
Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject
to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum
principal amount of THREE HUNDRED SEVENTY THOUSAND FIVE HUNDRED AND 00/100

(U.S. $         370500.00 ); (b) the payment of all other sums, with interest, advanced
under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the
terms of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in
DELAWARE                              County, Pennsylvania:

(QMPA) Rev 8/2/2005

32XC : 02/02

Page 1

MG-MORTGAGE

DELAWARE
COUNTY

See Attached

which has the address of      228 HAWTHORNE ROAD
                             [Street]

MORTON, PA  19070
[City, State, Zip]
("Property Address");

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

    **2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

    **3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

12. **Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

13. **Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of 3.580 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of DECEMBER 2008 , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above THIRTEEN AND 580/1000 percent ( 13.580 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Waivers.** Borrower to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Paragraph 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**28. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances of interest, MIP, Servicing Fees, and other charges shall be obligatory.

**29. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider  [ ] Shared Appreciation Rider  [ ] Planned Unit Development Rider
[ ] Other (Specify)

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Suzanne G. Paparo_ (Seal)
-Borrower
SUZANNE G PAPARO

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

[Space Below This Line For Lender and Recorder]

COMMONWEALTH OF Pennsylvania , Delaware COUNTY SS:

On this, the 9th day of September 2008 , before me James J. Vassaro , the undersigned officer, personally appeared

Suzanne G. Paparo

known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that She executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
James J. Vassalo, Jr., Notary Public
Springfield Twp., Delaware County
My Commission Expires Mar. 17, 2010
Member, Pennsylvania Association of Notaries

_____
Title of Officer

Certificate of Residence
I hereby certify that the correct address of the mortgagee is 1000 Blue Gentian Rd Eagan, MN 5512?

By: _____
Name:
Title:

35XC : 05/97

# *First American Title Insurance Company*

Commitment No. ▮▮▮▮▮▮▮

## SCHEDULE C

### Being Parcel No. ▮▮▮▮▮▮▮▮

### Being No. 228 Hawthorne Road, Morton, PA 19070

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, Situate in the Borough of Morton, County of Delaware, Pennsylvania, described according to a Survey and Plan made by Damon and Foster, Civil Engineers, Sharon Hill, Pa., dated February 13, 1952 and last revised October 6, 1954 as follows, to wit:-

BEGINNING at a point on the Southwesterly side of Hawthorne Road (50 feet wide) which point is measured South 36 degrees 20 minutes 30 seconds East 274.85 feet from a point which point is measured on the arc of a circle curving to the left having a radius of 200 feet the arc distance of 164.34 feet from a point which point is measured South 10 degrees 44 minutes 20 seconds West 93.24 feet from a point, which point is measured on the arc of a circle curving to the right having a radius of 25 feet the arc distance of 39.27 feet from a point on the Southwesterly side of Waverly Road (50 feet wide); thence extending along the said Southwesterly side of Hawthorne Road South 36 degrees 20 minutes 30 seconds East 45.91 feet to a point of curve; thence extending along the arc of a circle curving to the left having a radius of 150 feet the arc distance of 12.32 feet to a point; thence extending South 48 degrees 57 minutes 10 seconds West 126.13 feet to a point; thence North 36 degrees 20 minutes 30 seconds West 68.56 feet to a point; thence extending North 53 degrees 39 minutes 30 seconds East partly passing through the bed of a certain driveway which extends Northeast into Waverly Road 125.20 feet to a point on the Southwesterly side of Waverly Road the first mentioned point and place of beginning.

BEING Lot No. 158 on said Plan, being No. 228 Hawthorne Road.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway as and for a driveway, passageway and watercourse in common with the owners, tenants and occupiers of the adjoining lot of ground bounding thereon and entitled to the use thereof, at all times hereafter forever.

# EXHIBIT "C"

AS-ASSIGNMENTS
2017054866    10/11/2017 11:45:27 AM:6
RCD FEE: $78.50

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

PREPARED BY: WELLS FARGO BANK, N.A.

When Recorded Return To:
ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC: N9289-016
PO BOX 1629
EAGAN, MN  55121-4400

## CORPORATE ASSIGNMENT OF MORTGAGE

**Delaware, Pennsylvania**
"PAPARO"

**PROJECT**

Date of Assignment: September 26th, 2017
Assignor: WELLS FARGO BANK, N.A.
Assignee: NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY

I hereby certify the precise address of the within named Assignor is 1 HOME CAMPUS, DES MOINES, IA 50328.

Executed By: SUZANNE G PAPARO, A SINGLE PERSON  To: WELLS FARGO BANK, N.A.
Date of Mortgage:  09/09/2008 Recorded:  10/06/2008  in Book/Reel/Liber: 04440 Page/Folio: 0752 as Instrument/Document: 2008071005  In the County of Delaware, State of Pennsylvania.
Property Address: 228 HAWTHORNE ROAD, MORTON, PA  19070 in the Borough of MORTON

I do certify that the precise address of NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY is 8950 CYPRESS WATERS BLVD, COPPELL, TX  75019
Attested By: _____

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $370,500.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Security Instrument.

   TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

WELLS FARGO BANK, N.A.
On _____9/26/17_____

By: _____

    Lavendah Kwamboka Okwoyo ,
Vice President Loan Documentation

STATE OF Minnesota
COUNTY OF Dakota

On _9-26-17_, before me, ____Matthew J Jegerlehner____, a Notary Public in the State of
Minnesota, personally appeared ____Lavendah Kwamboka Okwoyo____ Vice President Loan
Documentation of WELLS FARGO BANK, N.A., personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and
that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
    Matthew J Jegerlehner
Notary Expires 1/31/ 2022

MATTHEW J JEGERLEHNER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

(This area for notarial seal)

## DO NOT DETACH



**Robert A. Auclair, Esq.**
Delaware County Recorder of Deeds
Government Center, Room 107
201 W. Front Street
Media, PA 19063
610-891-4152

**Instrument Number: 2022043937**
**Volume/Page: RECORD BK 6851 PG 0001**
**Recorded Date: 08/10/2022 3:05:28 PM**

| | |
|---|---|
| **Transaction Number:** | **Return To (Simplifile):** |
| **Collected By:** delsordor | Meridian Asset Services |
| **Document Type:** ASSIGNMENTS | 3201 34TH STREET SOUTHSUITE 310 |
| **Document Page Count:** : 3 | SAINT PETERSBURG, FL 33711 |

**Parcel ID**

**Fees:**

| | | |
|---|---|---|
| RECORDING FEES: | $37.50 | **Instrument Number: 2022043937** |
| COUNTY IMPROVEMENT FUND: | $5.00 | **Volume/Page: RECORD BK 6851 PG 0001** |
| JCS/ATJ FEE: | $40.25 | **Recorded Date: 08/10/2022 3:05:28 PM** |
| WRIT TAX: | $0.50 | |
| **Total Fees:** | $83.25 | |
| **Amount Paid:** | $83.25 | |
| **Amount Due:** | $0.00 | |

OFFICIAL RECORDING COVER PAGE
## DO NOT DETACH
THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT
NOTE: If the document data differs from this cover sheet, please first check the document on our website to ensure it has
been corrected.  The document data always supersedes the cover page.
If an error on the cover page appears on our website after review please let our office know.
COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL
INFORMATION.

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing,
LLC 2100 Alt. 19 North
Palm Harbor, FL 34683

### ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR)** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **MORTGAGE ASSETS MANAGEMENT, LLC, WHOSE ADDRESS IS, 12345 N LAMAR BLVD STE 125, AUSTIN, TX 78753, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 09/09/2008, in the amount of $370,500.00 made by **SUZANNE G PAPARO** to **WELLS FARGO BANK, N.A.,** recorded on 10/06/2008, in the Office of the Recorder of Deeds of **DELAWARE** County, **Pennsylvania,** in **Book 04440 and Page 0752.**

See Exhibit attached for Assignments, Modifications etc.
Mortgage Premises: 228 HAWTHORNE ROAD MORTON BOROUGH, MORTON, PA 19070.

**IN WITNESS WHEREOF,** the undersigned has caused this instrument to be executed in its name by **Cecelia Mansfield** its VICE PRESIDENT and authorized signer, on ___2/16/2022 (MM/DD/YYYY).
**NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY**

By: _Cecelia Mansfield_

**Cecelia Mansfield    VICE PRESIDENT**
All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.



STATE OF FLORIDA    COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on __Z / 16 /2022 (MM/DD/YYYY), by Cecelia Mansfield as VICE PRESIDENT of NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Tanner Dickson
Notary Public - STATE OF FLORIDA
Commission expires: 10/01/2024

TANNER DICKSON
NOTARY PUBLIC
STATE OF FLORIDA
COMM# HH 049515
EXPIRES: 10/01/2024

Assignment of Mortgage from:
**NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR)**
to:
**MORTGAGE ASSETS MANAGEMENT, LLC, WHOSE ADDRESS IS, 12345 N LAMAR BLVD STE 125, AUSTIN, TX 78753, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: SUZANNE G PAPARO


All that certain lot or piece of ground situated in
Mortgage Premises: 228 HAWTHORNE ROAD MORTON BOROUGH
                MORTON, PA 19070
                DELAWARE (Borough or Township, if stated), Commonwealth of Pennsylvania.
                Being more particularly described in said Mortgage.

I, **Cecelia Mansfield**, hereby certify that the below information and address for the assignee are correct:
**MORTGAGE ASSETS MANAGEMENT, LLC, WHOSE ADDRESS IS, 12345 N LAMAR BLVD STE 125, AUSTIN, TX 78753, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

By: Cecelia Mansfield
**Cecelia Mansfield    VICE PRESIDENT**
All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

Assignment: WELLS FARGO BANK, N.A. TO NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY DATED 09-26-2017. REC: 10-11-2017 BK 06073 PG 0706. AMT: $370,500.00

**EXHIBIT "D"**

L.B.F. 3015.1

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In re:

SUZANNE G. PAPARO

|  |  |
|---|---|
| Chapter | 13 |
| Case No. | 23-12439 |

Debtor

## Chapter 13 Plan

---

☒ Original
☐ Amended

Date:  8/16/23

### THE DEBTOR HAS FILED FOR RELIEF UNDER
### CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS WILL BE AFFECTED

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

### IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU
### MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE
### NOTICE OF MEETING OF CREDITORS.

**Part 1: Bankruptcy Rule 3015.1(c) Disclosures**

☐ Plan contains non-standard or additional provisions – see Part 9
☐ Plan limits the amount of secured claim(s) based on value of collateral – see Part 4
☐ Plan avoids a security interest or lien – see Part 4 and/or Part 9

**Part 2: Plan Payment, Length and Distribution** – *PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE*

**§ 2(a) Plan payments (For Initial and Amended Plans):**

**Total Length of Plan: 36**  months.

**Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee") $ 8892.00. Debtor shall pay the Trustee $ 247.00  per month for 36  months and then Debtor shall pay the Trustee $_____  per month for the remaining_____ months;

**or**

Debtor shall have already paid the Trustee $_____ through month number 4 and then shall pay the Trustee $ per month for the remaining  months.

Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b) Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):**

**§ 2(c) Alternative treatment of secured claims**:
☐  **None.** If "None" is checked, the rest of § 2(c) need not be completed.

☐  **Sale of real property**
*See § 7(c) below for detailed description*

☐  **Loan modification with respect to mortgage encumbering property**:
*See § 4(f) below for detailed description*

**§ 2(d) Other information that may be important relating to the payment and length of Plan:**

**§ 2(e) Estimated Distribution**:

A.   Total Priority Claims (Part 3)

    1.   Unpaid attorney's fees        $3225.00

    2.   Unpaid attorney's costs        $_____

    3.   Other priority claims (e.g., priority taxes)    $_____

B.       Total distribution to cure defaults (§ 4(b))    $_____

C.   Total distribution on secured claims (§§ 4(c) &(d))    $_____

D.   Total distribution on general unsecured claims(Part 5)   $4760.00

                   Subtotal     $7985.00

E.       Estimated Trustee's Commission    $907.00

F.   Base Amount    $8892.00

☐
**§2 (f) Allowance of Compensation Pursuant to L.B.R. 2016-3(a)(2)**

       X**By checking this box, Debtor's counsel certifies that the information contained in Counsel's Disclosure of Compensation [Form B2030] is accurate, qualifies counsel to receive compensation pursuant to L.B.R. 2016-3(a)(2), and requests this Court approve counsel's compensation in the total amount of $4725.00 , with the Trustee distributing to counsel the amount stated in §2(e)A.1. of the Plan. Confirmation of the plan shall constitute allowance of the requested compensation.**

## Part 3: Priority Claims

§ 3(a) Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise.

| Creditor | Claim Number | Type of Priority | Amount to be Paid by Trustee |
|---|---|---|---|
| TIMOTHY ZEARFOSS, ESQ | | ATTORNEY FEE | $3225.00 |
| | | | |

§ 3(b) Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.

☒None. If "None" is checked, the rest of § 3(b) need not be completed.

☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim. *This plan provision requires that payments in § 2(a) be for a term of 60 months; see 11 U.S.C. § 1322(a)(4).*

| Name of Creditor | Claim Number | Amount to be Paid by Trustee |
|---|---|---|
| | | |
| | | |

**Part 4: Secured Claims**

### § 4(a) Secured Claims Receiving No Distribution from the Trustee:

☐ **None.** If "None" is checked, the rest of § 4(a) need not be completed.

| Creditor | Claim Number | Secured Property |
|---|---|---|
| **X** If checked, the creditor(s) listed below will receive no distribution from the trustee and the parties' rights will be governed by agreement of the parties and applicable nonbankruptcy law.<br><br>PHH MTG | | 228 HAWTHORNE RD<br>MORTON,  PA |
| If checked, the creditor(s) listed below will receive no distribution from the trustee and the parties' rights will be governed by agreement of the parties and applicable nonbankruptcy law. | | |

### §4(b) Curing default and maintaining payments

☒ **None.** If "None" is checked, the rest of § 4(b) need not be completed.

The Trustee shall distribute an amount sufficient to pay allowed claims for prepetition arrearages; and, Debtor shall pay directly to creditor monthly obligations falling due after the bankruptcy filing in accordance with the parties' contract.

| Creditor | Claim Number | Description of Secured Property and Address, if real property | Amount to be Paid by Trustee |
|---|---|---|---|
| | | | |

**§ 4(c) Allowed secured claims to be paid in full: based on proof of claim or pre-confirmation determination of the amount, extent or validity of the claim**

☒ **None.** If "None" is checked, the rest of § 4(c) need not be completed.

(1)   Allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

(2) If necessary, a motion, objection and/or adversary proceeding, as appropriate, will be filed to determine the amount, extent or validity of the allowed secured claim and the court will make its determination prior to the confirmation hearing.

(3) Any amounts determined to be allowed unsecured claims will be treated either: (A) as a general unsecured claim under Part 5 of the Plan or (B) as a priority claim under Part 3, as determined by the court.

(4) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) will be paid at the rate and in the amount listed below. *If the claimant included a different interest rate or amount for "present value" interest in its proof of claim or otherwise disputes the amount provided for "present value" interest, the claimant must file an objection to confirmation.*

(5) Upon completion of the Plan, payments made under this section satisfy the allowed secured claim and release the corresponding lien.

| Name of Creditor | Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**§ 4(d) Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

☒ **None.** If "None" is checked, the rest of § 4(d) need not be completed.

The claims below were either (1) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or (2) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

(1) The allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

(2) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) will be paid at the rate and in the amount listed below. If the claimant included a different interest rate or amount for "present value" interest in its proof of claim, the court will determine the present value interest rate and amount at the confirmation hearing.

| Name of Creditor | Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

### § 4(e) Surrender

**XNone.** If "None" is checked, the rest of § 4(e) need not be completed.

     (1)  Debtor elects to surrender the secured property listed below that secures the creditor's claim.

     (2)  The automatic stay under 11 U.S.C. § 362(a) and 1301(a) with respect to the secured property terminates upon confirmation of the Plan.

     (3)  The Trustee shall make no payments to the creditors listed below on their secured claims.

### § 4(f) Loan Modification

     **None.** If "None" is checked, the rest of § 4(f) need not be completed.

     (1)  Debtor shall pursue a loan modification directly with <u>PHH MTG.</u>    or its successor in interest or its current servicer ("Mortgage Lender"), in an effort to bring the loan current and resolve the secured arrearage claim.

     (2) During the modification application process, Debtor shall make adequate protection payments directly to Mortgage Lender in the amount of $ (REMAIN CURRENT ON R.EST TAXES & HOI . Purs. to Sched J )per month, which represents <u>CURRENT R.EST. TAXES & HOI.</u>(*describe basis of adequate protection payment*). Debtor shall remit the adequate protection payments directly to the Mortgage Lender.

     (3)  If the modification is not approved by <u>5/18/24</u> (date), Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

## Part 5: General Unsecured Claims

### § 5(a) Separately classified allowed unsecured non-priority claims

**XNone.** If "None" is checked, the rest of § 5(a) need not be completed.

### § 5(b) Timely filed unsecured non-priority claims

     *(1)* Liquidation Test *(check one box)*

          X All Debtor(s) property is claimed as exempt.

          Debtor(s) has non-exempt property valued at $_____ for purposes of § 1325(a)(4) and plan provides for distribution of  $_____ to allowed priority and unsecured general creditors.

     *(2)* Funding: § 5(b) claims to be paid as follows *(check one box)*:

        **XPRO RATA**

Other (Describe)

☐

| Creditor | Claim Number | Secured Property |
|---|---|---|
| | | |

☐

☐

| Creditor | Claim Number | Basis for Separate Classification | Treatment | Amount to be Paid by Trustee |
|---|---|---|---|---|
| | | | | |

☐
☐

☐
☐
☐

## Part 6: Executory Contracts & Unexpired Leases

☒ **None.** If "None" is checked, the rest of § 6 need not be completed.

| Creditor | Claim Number | Nature of Contract or Lease | Treatment by Debtor Pursuant to §365(b) |
|---|---|---|---|
|  |  |  |  |

## Part 7: Other Provisions

### § 7(a) General principles applicable to the Plan
*(1)* Vesting of Property of the Estate *(check one box)*

   X Upon confirmation

     Upon discharge

(2) Subject to Bankruptcy Rule 3012 and 11 U.S.C. §1322(a)(4), the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made by the Trustee.

(4) If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

### § 7(b) Affirmative duties on holders of claims secured by a security interest in debtor's principal residence

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

(6) Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.

### § 7(c) Sale of Real Property
   ☒**None.** If "None" is checked, the rest of § 7(c) need not be completed.

    (1)  Closing for the sale of_____(the "Real Property") shall be completed within_____months of the commencement of this bankruptcy case (the "Sale Deadline"). Unless otherwise agreed by the parties or provided by the Court, each allowed claim secured by the Real Property will be paid in full under §4(b)(1) of the Plan at the closing ("Closing Date").

    (2)  The Real Property will be marketed for sale in the following manner and on the following terms:

    (3)  Confirmation of this Plan shall constitute an order authorizing the Debtor to pay at settlement all customary closing expenses and all liens and encumbrances, including all § 4(b) claims, as may be necessary to convey good and marketable title to the purchaser. However, nothing in this Plan shall preclude the Debtor from seeking court approval of the sale pursuant to 11 U.S.C. §363, either prior to or after confirmation of the Plan, if, in the Debtor's judgment, such approval is necessary or in order to convey insurable title or is otherwise reasonably necessary under the circumstances to implement this Plan.

    (4)  At the Closing, it is estimated that the amount of no less than $_____shall be made payable to the Trustee.

    (5)  Debtor shall provide the Trustee with a copy of the closing settlement sheet within 24 hours of the Closing Date.

    (6)  In the event that a sale of the Real Property has not been consummated by the expiration of the Sale Deadline:____.

---

## Part 8: Order of Distribution

**The order of distribution of Plan payments will be as follows:**

    **Level 1:** Trustee Commissions*
    **Level 2:** Domestic Support Obligations
    **Level 3:** Adequate Protection Payments
    **Level 4:** Debtor's attorney's fees
    **Level 5:** Priority claims, pro rata
    **Level 6:** Secured claims, pro rata
    **Level 7:** Specially classified unsecured claims
    **Level 8:** General unsecured claims
    **Level 9:** Untimely filed general unsecured non-priority claims to which debtor has not objected

***Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent.**

**Part 9: Non Standard or Additional Plan Provisions**

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

☐

**XNone.** If "None" is checked, the rest of Part 9 need not be completed.

**Part 10:  Signatures**

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan, and that the Debtor(s) are aware of, and consent to the terms of this Plan.

Date:   8/16/23 _____        /s/Tim Zearfoss, Esq _____

**Attorney for Debtor**

If Debtor(s) are unrepresented, they must sign below.

Date: _____        _____

**Debtor**

Date: _____        _____

**Joint Debtor**

**EXHIBIT "E"**

| | |
|---|---|
| Borrower Last Name | PAPARO |
| Property Address | 228 HAWTHORNE ROAD, MORTON, PA 19070 |
| MCA | 110.69 % |

**Total Amount Due for Reinstatement** $ 42,208.08

**Reinstatement as of:**    10/30/2023 12:00 AM

**\*This amount will change when any new advance is made for taxes, insurance, and/or HOA/COA Dues.**

**Details/Breakdown**

| Corporate Advances | | |
|---|---|---|
| **Date** | **Type** | **Amount** |
| 03/24/2022 | Corp Adv - S305 - Taxes | $ 1,657.17 |
| 03/24/2022 | Corp Adv - S305 - Taxes | $ 10.00 |
| 03/30/2022 | Corp Adv - S305 - Taxes | $ 709.98 |
| 08/19/2022 | Corp Adv - S305 - Taxes | $ 7,259.58 |
| 08/24/2022 | Corp Adv - S305 - Taxes | $ 4,613.46 |
| 08/24/2022 | Corp Adv - S305 - Taxes | $ 10.00 |
| 03/27/2023 | Corp Adv - S305 - Taxes | $ 709.98 |
| 04/12/2023 | Corp Adv - S305 - Taxes | $ 1,690.99 |
| 04/12/2023 | Corp Adv - S305 - Taxes | $ 10.00 |
| 08/23/2023 | Corp Adv - S305 - Taxes | $ 4,757.04 |
| 08/24/2023 | Corp Adv - S305 - Taxes | $ 10.00 |
| **Total** | | **$ 21,438.20** |

| Transfer Charges | | |
|---|---|---|
| **Date** | **Type** | **Amount** |
| 10/26/2023 | Prior Servicer Property Charges | $ 20,769.88 |
| **Total** | | **$ 20,769.88** |

# MEMORANDUM

| TAX YEAR(S) | DUPLICATE BILL FEE (DBF) |
|---|---|
| 2023 | $10.00 |

**PREPARED BY:** CORELOGIC TAX SERVICES

**FOR:** PHH

AGENCY ████            8/8/2023

| TAX IDENTIFICATION | LOAN |
|---|---|
| ██████ | ██████ |

| PROPERTY LOCATION / LEGAL DESCRIPTION | TAR NUMBER | TAX TYPE |
|---|---|---|
| 228 HAWTHORNE ROAD<br>MORTON, PA 19070 | 3730 | School |

OWNER/ADDRESS

PAPARO G SUZANNE
228 HAWTHORNE ROAD
MORTON, PA 19070

| INST NO | DUE DATE | BASE AMOUNT | PENALTY & INTEREST | PAID |
|---|---|---|---|---|
| 1 | 2023-08-31 | $4,757.04 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | TOTAL DUE (AMOUNT+ NTEREST) | | $4,757.04 | |

MAIL TO:

SPRINGFIELD S.D./MORTON BORO
232 HAWTHORNE RD
MORTON, PA 19070

MAKE CHECK PAYABLE TO   ▶   **SPRINGFIELD S.D./MORTON BORO**



**PHH Mortgage Services**

**Loan Balance History**

User  svc High Labor  Run Time  10/30/2023 11:41:08 PM

Good Through Date  10/30/2023 12 00 00 AM

**Report Description**  Displays all the transactions for the selected loan

Borrowers Last Name  PAPARO

Propery Address  228 HAWTHORNE ROAD, MORTON, PA, 19070
Investor Name  Cascade Funding Mortgage Trust - HB11

| Transaction Date | Transaction Description | Principal Amount | Interest | MIP | Service Fee Amount | Corporate Advance Amount | Totals |
|---|---|---|---|---|---|---|---|
| 10/26/2023 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 10/19/2023 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0 00 | $550.00 | **$550.00** |
| 10/16/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 9/30/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,557.84 | $113.22 | $30 00 | $0.00 | **$1,701.06** |
| 9/27/2023 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 9/21/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 9/12/2023 | Corp Adv - S306 - Attorney Fees | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 9/12/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $0.63 | **$0.63** |
| 9/6/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 8/31/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,521.30 | $112.52 | $30 00 | $0.00 | **$1,663.82** |
| 8/28/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 8/25/2023 | Re-Class Disbursement (Source) | $0.00 | $0.00 | $0.00 | $0 00 | ($20.00) | **($20.00)** |
| 8/25/2023 | Re-Class Disbursement (Source) | $0.00 | $0.00 | $0.00 | $0 00 | ($35.00) | **($35.00)** |
| 8/25/2023 | Re-Class Disbursement (Source) | $0.00 | $0.00 | $0.00 | $0 00 | ($20.00) | **($20.00)** |
| 8/25/2023 | Re-Class Disbursement (Source) | $0.00 | $0.00 | $0.00 | $0 00 | ($20.00) | **($20.00)** |
| 8/25/2023 | Re-Class Disbursement (Destination) | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 8/25/2023 | Re-Class Disbursement (Destination) | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 8/25/2023 | Re-Class Disbursement (Destination) | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 8/25/2023 | Re-Class Disbursement (Destination) | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $1.44 | **$1.44** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $1.38 | **$1.38** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $1.38 | **$1.38** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $6.85 | **$6.85** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $6.85 | **$6.85** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $0.60 | **$0.60** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $1.44 | **$1.44** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $1.44 | **$1.44** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $1.44 | **$1.44** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $1.44 | **$1.44** |
| 8/24/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $265.00 | **$265.00** |
| 8/24/2023 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $10.00 | **$10.00** |
| 8/23/2023 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $4,757.04 | **$4,757.04** |
| 8/3/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 7/31/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,487.52 | $111.84 | $30 00 | $0.00 | **$1,629.36** |
| 6/30/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,383.43 | $111.21 | $30 00 | $0.00 | **$1,524.64** |
| 6/22/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 6/21/2023 | Corp Adv - S409 - Appraisal Fees | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 5/31/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,318.35 | $110.60 | $30 00 | $0.00 | **$1,458.95** |
| 5/22/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 5/16/2023 | Corp Adv - S307 - Sheriff Fees | $0.00 | $0.00 | $0.00 | $0 00 | $3,000.00 | **$3,000.00** |
| 5/16/2023 | Corp Adv - S306 - Attorney Fees | $0.00 | $0.00 | $0.00 | $0 00 | $470.00 | **$470.00** |
| 5/16/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $47.50 | **$47.50** |
| 4/30/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,442.42 | $109.94 | $30 00 | $0.00 | **$1,582.36** |
| 4/14/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 4/12/2023 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $1,690.99 | **$1,690.99** |
| 4/12/2023 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $10.00 | **$10.00** |
| 3/31/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,353.37 | $109.32 | $30 00 | $0.00 | **$1,492.69** |
| 3/27/2023 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $709.98 | **$709.98** |
| 3/10/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |



**PHH Mortgage Services**

**Loan Balance History**

User  svc  PgN  Labor  Run Time  10/30/2023 4:43:09 PM

Good Through Date  10/30/2023 12 00 00 AM

**Report Description**  Displays all the transactions for the selected loan

**Borrowers Last Name  PAPARO**

**Propery Address  228 HAWTHORNE ROAD, MORTON, PA, 19070**

**Investor Name  Cascade Funding Mortgage Trust - HB11**

| Date | Description | | | | | | Total |
|------|-------------|---|---|---|---|---|-------|
| 2/28/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,334.90 | $108.70 | $30 00 | $0.00 | **$1,473.60** |
| 2/27/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 2/21/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 2/9/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 2/6/2023 | Corp Adv - S306 - Attorney Fees | $0.00 | $0.00 | $0.00 | $0 00 | $875.00 | **$875.00** |
| 2/2/2023 | Corp Adv - S306 - Attorney Fees | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 2/2/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $52.50 | **$52.50** |
| 2/2/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $12.60 | **$12.60** |
| 1/31/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,353.21 | $108.08 | $30 00 | $0.00 | **$1,491.29** |
| 1/17/2023 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 12/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $1,302.70 | $107.48 | $30 00 | $0.00 | **$1,440.18** |
| 12/14/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 12/6/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 11/30/2022 | Monthly Int, M P Accrual & SF | $0.00 | $1,193.33 | $106.93 | $30 00 | $0.00 | **$1,330.26** |
| 11/18/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $35.00 | **$35.00** |
| 10/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $1,028.25 | $106.44 | $30 00 | $0.00 | **$1,164.69** |
| 10/13/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 9/30/2022 | Monthly Int, M P Accrual & SF | $0.00 | $956.02 | $105.99 | $30 00 | $0.00 | **$1,092.01** |
| 9/7/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 8/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $914.08 | $105.55 | $30 00 | $0.00 | **$1,049.63** |
| 8/24/2022 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $4,613.46 | **$4,613.46** |
| 8/24/2022 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $10.00 | **$10.00** |
| 8/19/2022 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $7,259.58 | **$7,259.58** |
| 8/4/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 7/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $740.51 | $105.19 | $30 00 | $0.00 | **$875.70** |
| 7/6/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 6/30/2022 | Monthly Int, M P Accrual & SF | $0.00 | $740.04 | $104.82 | $30 00 | $0.00 | **$874.86** |
| 6/21/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 5/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $637.45 | $104.50 | $30 00 | $0.00 | **$771.95** |
| 5/25/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 5/19/2022 | Corp Adv - S405 - Overhead Costs | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | **$0.00** |
| 5/9/2022 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $0.53 | **$0.53** |
| 5/9/2022 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $49.25 | **$49.25** |
| 5/6/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 4/30/2022 | Monthly Int, M P Accrual & SF | $0.00 | $550.26 | $104.22 | $30 00 | $0.00 | **$684.48** |
| 4/27/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 4/20/2022 | Corp Adv - Prop Preserve - Prop Inspect | $0.00 | $0.00 | $0.00 | $0 00 | $20.00 | **$20.00** |
| 3/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $432.55 | $103.98 | $30 00 | $0.00 | **$566.53** |
| 3/31/2022 | Corp Adv - S306 - Attorney Fees | $0.00 | $0.00 | $0.00 | $0 00 | $235.00 | **$235.00** |
| 3/31/2022 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $312.11 | **$312.11** |
| 3/30/2022 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $709.98 | **$709.98** |
| 3/24/2022 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $1,657.17 | **$1,657.17** |
| 3/24/2022 | Corp Adv - S305 - Taxes | $0.00 | $0.00 | $0.00 | $0 00 | $10.00 | **$10.00** |
| 2/28/2022 | Monthly Int, M P Accrual & SF | $0.00 | $371.49 | $103.77 | $30 00 | $0.00 | **$505.26** |
| 2/2/2022 | Loan Setup - Advances (Principal) | $28,532.99 | $0.00 | $0.00 | $0 00 | $0.00 | **$28,532.99** |
| 2/2/2022 | Loan Setup - Sch Payment (Principal) | $155,278.20 | $0.00 | $0.00 | $0 00 | $0.00 | **$155,278.20** |
| 2/2/2022 | Loan Setup - Interest Balance | $0.00 | $44,463.74 | $0.00 | $0 00 | $0.00 | **$44,463.74** |
| 2/2/2022 | Loan Setup - Property Charges Balance | $20,769.88 | $0.00 | $0.00 | $0 00 | $0.00 | **$20,769.88** |
| 2/2/2022 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0 00 | $50.51 | **$50.51** |
| **Totals** | | **$204,581.07** | **$66,082.76** | **$2,154.30** | **$600.00** | **$27,684.53** | **$301,102.66** |

# PHH Mortgage Services

10/30/2023 11:44:48 PM

**Disbursement Detail Report**

| | | | | | |
|---|---|---|---|---|---|
| Servicer Name: | **ALL** | Product Type: | **ALL** | Disb. Type | **ALL** |
| Investor Name: | **ALL** | Pay Plan Type: | **ALL** | Reimbursable: | **Included** |
| Investor Pool: | **ALL** | Transaction Type: | **ALL** | Voided: | **Included** |
| Loan Status: | **ALL** | Property State: | **ALL** | Cleared: | **Included** |
| Loan Sub-Status: | **ALL** | Created By: | **ALL** | Pymt Stopped: | **Included** |
| | | Credit Type: | **ALL** | Check #: | **ALL** |

| | |
|---|---|
| Disb. Date: | **ALL** |
| Fund Req. Date: | **ALL** |
| Voided Date: | **ALL** |
| Cleared Date: | **ALL** |
| Process Date: | **ALL** |
| Create Date: | **ALL** |

| | |
|---|---|
| Disb. Status: | **All** |
| ARM Type: | **ALL** |
| Rate Index Type: | **ALL** |

| Investor Pool | Loan Skey | Loan # | Loan Status | Payment Plan | Disbursement Type | Pay To | Check / ACH # | Created By | Create Date | Process Date | Disb. Date | Disb. Amount | Disbursement Status | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Disbursed | Cleared | Voided | Reimb. | Stopped |

**Servicer Name: PHH Mortgage Services**

**Investor Name: Cascade Funding Mortgage Trust - HB11**

| Investor Pool | Loan Skey | Loan # | Loan Status | Payment Plan | Disbursement Type | Pay To | Check / ACH # | Created By | Create Date | Process Date | Disb. Date | Disb. Amount | Disbursed | Cleared | Voided | Reimb. | Stopped |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 04/15/2022 | 04/19/2022 | 04/20/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 04/22/2022 | 04/26/2022 | 04/27/2022 | $35.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 05/03/2022 | 05/05/2022 | 05/06/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 09/01/2022 | 09/06/2022 | 09/07/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 10/10/2022 | 10/12/2022 | 10/13/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 11/15/2022 | 11/17/2022 | 11/18/2022 | $35.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 12/01/2022 | 12/05/2022 | 12/06/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 12/09/2022 | 12/13/2022 | 12/14/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 01/11/2023 | 01/13/2023 | 01/17/2023 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 05/20/2022 | 05/24/2022 | 05/25/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 06/16/2022 | 06/20/2022 | 06/21/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 06/30/2022 | 07/05/2022 | 07/06/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 08/01/2022 | 08/03/2022 | 08/04/2022 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 02/06/2023 | 02/08/2023 | 02/09/2023 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | National Field Representatives, Inc. (N) | | System Process | 03/07/2023 | 03/09/2023 | 03/10/2023 | $20.00 | ☑ | ☑ | ☐ | ☐ | ☐ |

## PHH Mortgage Services

10/30/2023 11:44:48 PM

### Disbursement Detail Report

| | | | | | |
|---|---|---|---|---|
| Servicer Name: **ALL** | Product Type: **ALL** | Disb. Type **ALL** | Disb. Date: **ALL** | Disb. Status: **All** |
| Investor Name: **ALL** | Pay Plan Type: **ALL** | Reimbursable: **Included** | Fund Req. Date: **ALL** | ARM Type: **ALL** |
| Investor Pool: **ALL** | Transaction Type: **ALL** | Voided: **Included** | Voided Date: **ALL** | Rate Index Type: **ALL** |
| Loan Status: **ALL** | Property State: **ALL** | Cleared: **Included** | Cleared Date: **ALL** | |
| Loan Sub-Status: **ALL** | Created By: **ALL** | Pymt Stopped: **Included** | Process Date: **ALL** | |
| Loan Skey: ▮ | Credit Type: **ALL** | Check #: **ALL** | Create Date: **ALL** | |

| Investor Pool | Loan Skey | Loan # | Loan Status | Payment Plan | Disbursement Type | Pay To | Check / ACH # | Created By | Create Date | Process Date | Disb. Date | Disb. Amount | Disbursement Status | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Disbursed | Cleared | Voided | Reimb. | Stopped |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Guardian Asset Management (N) | | System Process | 04/11/2023 | 04/13/2023 | 04/14/2023 | $20.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Guardian Asset Management (N) | | MOHAMAD Sinaj | 07/21/2023 | 07/21/2023 | | $20.00 | ☐ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Guardian Asset Management (N) | | System Process | 07/31/2023 | 08/02/2023 | 08/03/2023 | $20.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Guardian Asset Management (N) | | System Process | 05/17/2023 | 05/19/2023 | 05/22/2023 | $20.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Guardian Asset Management (N) | | System Process | 06/16/2023 | 06/21/2023 | 06/22/2023 | $20.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Guardian Asset Management (N) | | System Process | 08/23/2023 | 08/25/2023 | 08/28/2023 | $20.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Guardian Asset Management (N) | | System Process | 09/18/2023 | 09/20/2023 | 09/21/2023 | $20.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Guardian Asset Management (N) | | System Process | 10/11/2023 | 10/13/2023 | 10/16/2023 | $20.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KRISTIN ACQUAROLA-TX COLLECTOR | | RQ6 Bot6 | 08/21/2023 | 08/22/2023 | 08/23/2023 | $4,757.04 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KRISTIN ACQUAROLA-TX COLLECTOR | | Rajendra R | 08/22/2023 | 08/23/2023 | 08/24/2023 | $10.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | DELAWARE COUNTY - TREASURER | | RQ6 Bot6 | 03/24/2023 | 03/24/2023 | 03/27/2023 | $709.98 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KRISTIN ACQUAROLA-TX COLLECTOR | | Rajendra R | 04/11/2023 | 04/11/2023 | 04/12/2023 | $1,690.99 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KRISTIN ACQUAROLA-TX COLLECTOR | | Rajendra R | 04/11/2023 | 04/11/2023 | 04/12/2023 | $10.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | DELAWARE COUNTY TAX CLAIM BUREAU | | Jennifer Veit | 08/18/2022 | 08/18/2022 | 08/19/2022 | $7,259.58 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KRISTIN ACQUAROLA-TX COLLECTOR | | Derick Thomas | 08/23/2022 | 08/23/2022 | 08/24/2022 | $4,613.46 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KRISTIN ACQUAROLA-TX COLLECTOR | | Derick Thomas | 08/23/2022 | 08/23/2022 | 08/24/2022 | $10.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KRISTIN ACQUAROLA-TX COLLECTOR | | Jennifer Veit | 03/23/2022 | 03/23/2022 | 03/24/2022 | $1,657.17 | ☑ | ☑ | ☐ | ☐ | ☐ |

Page 2 of 5

# PHH Mortgage Services

10/30/2023 11:44:48 PM

## Disbursement Detail Report

| | | |
|---|---|---|
| Servicer Name: | **ALL** | |
| Investor Name: | **ALL** | |
| Investor Pool: | **ALL** | |
| Loan Status: | **ALL** | |
| Loan Sub-Status: | **ALL** | |
| Loan Skey: | | |

| Product Type: | **ALL** |
|---|---|
| Pay Plan Type: | **ALL** |
| Transaction Type: | **ALL** |
| Property State: | **ALL** |
| Created By: | **ALL** |
| Credit Type: | **ALL** |

| Disb. Type | **ALL** |
|---|---|
| Reimbursable: | **Included** |
| Voided: | **Included** |
| Cleared: | **Included** |
| Pymt Stopped: | **Included** |
| Check #: | **ALL** |

| Disb. Date: | **ALL** |
|---|---|
| Fund Req. Date: | **ALL** |
| Voided Date: | **ALL** |
| Cleared Date: | **ALL** |
| Process Date: | **ALL** |
| Create Date: | **ALL** |

| Disb. Status: | **All** |
|---|---|
| ARM Type: | **ALL** |
| Rate Index Type: | **ALL** |

| Investor Pool | Loan Skey | Loan # | Loan Status | Payment Plan | Disbursement Type | Pay To | Check / ACH # | Created By | Create Date | Process Date | Disb. Date | Disb. Amount | Disbursement Status | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Disbursed | Cleared | Voided | Reimb. | Stopped |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KRISTIN ACQUAROLA-TX COLLECTOR | | Jennifer Veit | 03/23/2022 | 03/23/2022 | 03/24/2022 | $10.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | DELAWARE COUNTY - TREASURER | | Tinesha Darrough | 03/29/2022 | 03/29/2022 | 03/30/2022 | $709.98 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | Black Knight Real Estate Data Solutions, LLC | | System Process | 02/13/2023 | 02/20/2023 | 02/21/2023 | $0.63 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | Black Knight Real Estate Data Solutions, LLC | | System Process | 02/17/2023 | 02/24/2023 | 02/27/2023 | $0.64 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KML Law Group, P.C. | | System Process | 02/01/2023 | 02/01/2023 | 02/02/2023 | $150.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KML Law Group, P.C. | | System Process | 02/03/2023 | 02/03/2023 | 02/06/2023 | $875.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 05/15/2023 | 05/15/2023 | 05/16/2023 | $470.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 09/11/2023 | 09/11/2023 | 09/12/2023 | $35.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | MOHAMAD Sinaj | 07/21/2023 | 07/21/2023 | | $1,258.20 | ☐ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KML Law Group, P.C. | | System Process | 03/30/2022 | 03/30/2022 | 03/31/2022 | $235.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 05/15/2023 | 05/15/2023 | 05/16/2023 | $3,000.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 09/05/2023 | 09/05/2023 | 09/06/2023 | $66.75 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 09/11/2023 | 09/11/2023 | 09/12/2023 | $0.63 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $1.44 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $1.38 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $1.38 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $6.85 | ☑ | ☐ | ☐ | ☐ | ☐ |

## PHH Mortgage Services

10/30/2023 11:44:48 PM

**Disbursement Detail Report**

| Servicer Name: | **ALL** | Product Type: | **ALL** | Disb. Type | **ALL** | Disb. Date: | **ALL** | Disb. Status: | **All** |
|---|---|---|---|---|---|---|---|---|---|
| Investor Name: | **ALL** | Pay Plan Type: | **ALL** | Reimbursable: | **Included** | Fund Req. Date: | **ALL** | ARM Type: | **ALL** |
| Investor Pool: | **ALL** | Transaction Type: | **ALL** | Voided: | **Included** | Voided Date: | **ALL** | Rate Index Type: | **ALL** |
| Loan Status: | **ALL** | Property State: | **ALL** | Cleared: | **Included** | Cleared Date: | **ALL** | | |
| Loan Sub-Status: | **ALL** | Created By: | **ALL** | Pymt Stopped: | **Included** | Process Date: | **ALL** | | |
| Loan Skey: | | Credit Type: | **ALL** | Check #: | **ALL** | Create Date: | **ALL** | | |

| Investor Pool | Loan Skey | Loan # | Loan Status | Payment Plan | Disbursement Type | Pay To | Check / ACH # | Created By | Create Date | Process Date | Disb. Date | Disb. Amount | Disbursement Status | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Disbursed | Cleared | Voided | Reimb. | Stopped |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $6.85 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $0.60 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $1.44 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $1.44 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $1.44 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $1.44 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $1.44 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 08/23/2023 | 08/23/2023 | 08/24/2023 | $265.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | KML Law Group, P.C. | | System Process | 05/15/2023 | 05/15/2023 | 05/16/2023 | $47.50 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KML Law Group, P.C. | | System Process | 03/30/2022 | 03/30/2022 | 03/31/2022 | $312.11 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KML Law Group, P.C. | | System Process | 05/06/2022 | 05/06/2022 | 05/09/2022 | $0.53 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KML Law Group, P.C. | | System Process | 05/06/2022 | 05/06/2022 | 05/09/2022 | $49.25 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KML Law Group, P.C. | | System Process | 02/01/2023 | 02/01/2023 | 02/02/2023 | $52.50 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - Check | KML Law Group, P.C. | | System Process | 02/01/2023 | 02/01/2023 | 02/02/2023 | $12.60 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Robertson, Anschutz, Schneid, Crane & Partners | | System Process | 10/18/2023 | 10/18/2023 | 10/19/2023 | $550.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Robertson, Anschutz, Schneid, Crane & Partners | | System Process | 10/25/2023 | 10/25/2023 | 10/26/2023 | $700.00 | ☑ | ☐ | ☐ | ☐ | ☐ |

# PHH Mortgage Services

10/30/2023 11:44:48 PM

## Disbursement Detail Report

| | | | | | |
|---|---|---|---|---|
| Servicer Name: **ALL** | Product Type: **ALL** | Disb. Type **ALL** | Disb. Date: **ALL** | Disb. Status: **All** |
| Investor Name: **ALL** | Pay Plan Type: **ALL** | Reimbursable: **Included** | Fund Req. Date: **ALL** | ARM Type: **ALL** |
| Investor Pool: **ALL** | Transaction Type: **ALL** | Voided: **Included** | Voided Date: **ALL** | Rate Index Type: **ALL** |
| Loan Status: **ALL** | Property State: **ALL** | Cleared: **Included** | Cleared Date: **ALL** | |
| Loan Sub-Status: **ALL** | Created By: **ALL** | Pymt Stopped: **Included** | Process Date: **ALL** | |
| Loan Skey: ▮▮▮ | Credit Type: **ALL** | Check #: **ALL** | Create Date: **ALL** | |

| Investor Pool | Loan Skey | Loan # | Loan Status | Payment Plan | Disbursement Type | Pay To | Check / ACH # | Created By | Create Date | Process Date | Disb. Date | Disb. Amount | Disbursement Status | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Disbursed | Cleared | Voided | Reimb. | Stopped |
| Cascade Funding - 2023 HB11 | ▮ | | BNK/FCL | Line of Credit | Corporate Advance - ACH | Robertson, Anschutz, Schneid, Crane & Partners | | System Process | 09/26/2023 | 09/26/2023 | 09/27/2023 | $250.00 | ☑ | ☐ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | ▮ | | BNK/FCL | Line of Credit | Corporate Advance - Check | LRES Corporation | | System Process | 06/20/2023 | 06/20/2023 | 06/21/2023 | $400.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | ▮ | | BNK/FCL | Line of Credit | Corporate Advance - Check | Black Knight Real Estate Data Solutions, LLC | | System Process | 05/11/2022 | 05/18/2022 | 05/19/2022 | $0.64 | ☑ | ☑ | ☐ | ☐ | ☐ |
| Cascade Funding - 2023 HB11 | ▮ | | BNK/FCL | Line of Credit | Loss Draft - Check | SUZANNE G. PAPARO & Novelli Construction | | Jennifer Lastrape | 04/28/2022 | 04/28/2022 | 04/29/2022 | $18,480.88 | ☑ | ☑ | ☐ | ☐ | ☐ |
| **Total for Investor: Cascade Funding Mortgage Trust - HB11** | | | | | **Loan Count: 1** | | **Disbursement Count: 69** | | | | | **$49,166.76** | **67** | **39** | **0** | **0** | **0** |
| **Total for Servicer: PHH Mortgage Services** | | | | | **Loan Count: 1** | | **Disbursement Count: 69** | | | | | **$49,166.76** | **67** | **39** | **0** | **0** | **0** |
| **Grand Total:** | | | | | **Loan Count: 1** | | **Disbursement Count: 69** | | | | | **$49,166.76** | **67** | **39** | **0** | **0** | **0** |

Alerts Included: **ALL**
Alerts Excluded: **None**



# PHH Mortgage Services

10/30/2023 11:45:40 PM

## Remittance Detail Report

| Servicer Name: | ALL | | Product Type: | ALL | | Remit Create Date: | ALL |
|---|---|---|---|---|---|---|---|
| Investor Name: | ALL | | Loan Status: | ALL | | Remit. Created By: | ALL |
| Investor Pool: | ALL | | Loan Sub-Status: | ALL | | Remit. Effective Date: | ALL |
| Loan Channel: | ALL | | Remit. Type: | ALL | | Ref. Check #: | ALL |
| Loan Skey: | | | Remit. Amount: | ALL | | Remitted By: | ALL |
| Remit Trans. Types: | | | Remit Status: | ALL | | Batch Skey: | ALL |
| | | | | | | Mail Room Batch #: | ALL |

| Loan Skey | Loan # | Loan Status | Loan Sub-Status | Batch Skey | Transaction Type | Effective Date | Remit Type | Remit Status | Remit Amount | Check Date | Reference Check # | Created By | Create Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**PHH Mortgage Services   -   Cascade Funding Mortgage Trust - HB11   -   Cascade Funding - 2023 HB11**

| Loan Skey | Loan # | Loan Status | Loan Sub-Status | Batch Skey | Transaction Type | Effective Date | Remit Type | Remit Status | Remit Amount | Check Date | Reference Check # | Created By | Create Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | BNK/FCL | Bnk/Fcl - Chapt. 13 | | Loss Draft - Setup | 03/02/2022 | Check | Active | $18,480.88 | 02/02/2022 | | Shandrica.Hawkins | 03/02/2022 02:42PM |
| Total for Cascade Funding - 2023 HB11 | | Loan Count: 1 | | | | | | Remit Transaction(s) Count: 1 | $18,480.88 | | | | |
| **Total for Cascade Funding Mortgage Trust - HB11** | | **Loan Count: 1** | | | | | | **Remit Transaction(s) Count: 1** | **$18,480.88** | | | | |
| **Grand Total:** | | **Loan Count: 1** | | | | | | **Remit Transaction(s) Count: 1** | $18,480.88 | | | | |

Alerts Included: **ALL**
Alerts Excluded: **NONE**

Created By:



P.O. Box 24606
West Palm Beach, FL 33416

Statement Date:    October 02, 2023
Month Ending:    September 30, 2023

# Monthly Statement

00001
SUZANNE G PAPARO
228 HAWTHORNE ROAD
MORTON, PA 19070

### *** THIS IS NOT A BILL ***

| Account Information | | *Credit Line Set Aside Information | |
|---|---|---|---|
| Pay Plan Type: | Line of Credit | Original Credit Line: | $0.00 |
| Funded Date: | 09/15/2008 | Current Gross Credit Line: | $0.00 |
| Loan #: | ▮▮▮▮▮ | Unsch. Credit Line Disb. Bal. (-): | $0.00 |
| Borrower: | SUZANNE G PAPARO | Net Credit Line Set Aside (=): | **$0.00** |
| Property: | 228 HAWTHORNE ROAD MORTON, PA 19070 | *Modified Term or Modified Tenure only* | |

| Interest Rates | | | | | Principal Limit Information | |
|---|---|---|---|---|---|---|
| ARM Type: Monthly | | Rate Index: 1-Year CMT | | | Original Principal Limit: | $156,351.00 |
| Month | Index | Margin | Int. Rate | (Index+Margin) | Current Principal Limit: | $245,325.13 |
| September | 5.380% | 1.500% | 6.880% | | Loan Balance (-): | $273,418.13 |
| October | 5.390% | 1.500% | 6.890% | | Repair Set Aside (-): | $0.00 |
| November(**) | 5.460% | 1.500% | 6.960% | | First Year Set Aside (-): | $0.00 |

*Your Reverse Mortgage loan has a variable-rate feature; the monthly and daily periodic rates may vary as a result. Please refer to important information found on the back of this monthly statement and on the additional page.*

| | |
|---|---|
| Credit Line Set Aside (-): | $0.00 |
| Life Expectancy Set Aside Amt (-): | $0.00 |
| Servicing Fee Set Aside (-): | $4,417.65 |
| Net Principal Limit (=): | **($32,510.65)** |

## Interest Rate Information

### ANNUAL PERCENTAGE RATE (APR): 7.512%

| Loan Periodic Rates: | | Mortgage Insurance Premium (MIP) Periodic Rates: | | Finance Charge: | |
|---|---|---|---|---|---|
| Monthly Periodic Rate on Applicable Principal Balance: | 0.573% | MIP Monthly Periodic Rate on Applicable Principal Balance: | 0.042% | Periodic **Finance Charge:** | **$1,557.84** |
| Daily Periodic Rate on Applicable Advances or Payments: | 0.019% | MIP Daily Periodic Rate on Applicable Advances or Payments: | 0.001% | | |
| Corresponding APR: | 6.880% | Corresponding APR: | 0.500% | | |

### ** Notice of Changes in your Interest Rate on your Adjustable Rate Reverse Mortgage

On November 01, 2023, the interest rate on your adjustable-rate Reverse Mortgage will increase from 6.890% to 6.960%. Your present interest rate was based on an index value of 5.390%. To determine your new interest rate, we added the current index value of 5.460% as of October 02, 2023 as published by the Federal Reserve Bank, to the agreed upon margin of 1.500% for a total of 6.960%. This new rate has not been rounded to the nearest 1/8th percent. The initial interest rate on your mortgage was 3.580%, which may not be increased beyond 13.580% during the life of the mortgage.

### Total Funds Available

| | |
|---|---|
| Net Credit Line Set Aside + Net Principal Limit = | **$0.00** |

If you have any questions or would like further information on your reverse mortgage, please call our Customer Service Support Team at the number shown below. They are available to assist you Monday through Friday, from 8am to 7pm EST.

Loan Skey ▮▮▮▮▮
Rep. Skey ▮▮▮▮▮

P.O. Box 24606, West Palm Beach, FL 33416
Phone (866) 503-5559 ~ FAX (561) 682-8644 ~ TRS 711
Email customerassist@phhreverse.com

Page 1 of 4

**PHH**
**MORTGAGE**

P.O. Box 24606
West Palm Beach, FL 33416

Statement Date: October 02, 2023
Month Ending:    September 30, 2023

## Loan Balance Activity

| | Current Month | Year To Date |
|---|---|---|
| Previous Loan Balance: | **$271,717.07** | **$259,400.36** |
| Loan Advance / Scheduled Payment (if applicable): | $0.00 | $0.00 |
| Loan Advance / Unscheduled Disbursements (if applicable): | $0.00 | $0.00 |
| Repair Set Aside Disbursements: | $0.00 | $0.00 |
| Taxes Paid: | $0.00 | $0.00 |
| Insurance Paid: | $0.00 | $0.00 |
| Other Property Charges: | $0.00 | $0.00 |
| Interest **(Finance Charge):** | $1,557.84 | $12,752.34 |
| MIP **(Finance Charge):** paid to HUD: | $113.22 | $995.43 |
| Monthly Servicing Fee **(Finance Charge):** | $30.00 | $270.00 |
| Change of Plan Fee/Misc. **(Finance Charge):** | $0.00 | $0.00 |
| Repayments (See Transaction Information): | $0.00 | $0.00 |
| *Total Balance Activity:* | *$1,701.06* | *$14,017.77* |
| Closing Loan Balance as of September 30, 2023: | **$273,418.13** | **$273,418.13** |
| * Corporate Advance (not part of Loan Balance): | $0.63 | $11,991.94 |

## Transaction Information

| Transaction Date | Effective Date | Transaction Description | Principal Advances | Interest | MIP | Servicing Fee | Cumulative Loan Advances this Month | *Corporate Advance (not part of Loan Balance) |
|---|---|---|---|---|---|---|---|---|
| 9/12/2023 | 9/12/2023 | Corp Adv - S307 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.63 |
| 9/30/2023 | 9/30/2023 | Monthly Interest, MIP Accrual & SF | $0.00 | $1,557.84 | $113.22 | $30.00 | $1,701.06 | $0.00 |
| **Grand Total:** | | | **$0.00** | **$1,557.84** | **$113.22** | **$30.00** | **$1,701.06** | **$0.63** |

*(Int) Interest - (MIP) Mortgage Insurance Premium - (SF) Servicing Fee - (Disb) Advance Disbursement - (Part Repay) Partial Repayment*

Loan Skey
Rep. Skey

P.O. Box 24606, West Palm Beach, FL 33416
Phone (866) 503-5559 ~ FAX (561) 682-8644 ~ TRS 711
Email customerassist@phhreverse.com

Page 2 of 4



P.O. Box 24606
West Palm Beach, FL 33416

Statement Date:  October 02, 2023
Month Ending:    September 30, 2023

### A. ANNUAL PERCENTAGE RATE (APR)
The ANNUAL PERCENTAGE RATE for the interest portion of your FINANCE CHARGE may increase or decrease annually based upon  changes in  the ("Index"). Therefore, the monthly and daily periodic rates relating to the interest portion of your FINANCE CHARGE may vary.  To determine the ANNUAL PERCENTAGE RATE that will apply to your  Account, we add a margin to the value of the Index, subject to certain rate limitations as provided in your Reverse Mortgage Note.

The corresponding annual percentage rate for the interest portion of the FINANCE CHARGE does not include costs other than interest. The historical ANNUAL PERCENTAGE RATE includes interest and all other FINANCE CHARGES that relate to your loan.

### B. FINANCE CHARGES
Each advance or payment made to you or on your behalf under your Reverse Mortgage will be subject to a FINANCE CHARGE beginning on the day after each advance or payment is made.  A FINANCE CHARGE will continue to be assessed on your Reverse Mortgage until the entire outstanding balance and all fees due under the Notes, Security Instruments and Loan Agreement are paid.

### C. INTEREST
The interest portion of the FINANCE CHARGE on your Account is computed by (i) calculating the FINANCE CHARGE on the balance existing at the beginning of each month, which includes any payments or credits applied to your loan during the previous month, (ii) calculating the FINANCE CHARGE on each advance, payment or credit made to you or on your behalf during the month, and then (iii) adding all of these sums together, as follows:

We start with the outstanding principal balance on your Account at the beginning of each month, which includes FINANCE CHARGES from the previous month (the "Previous Loan Balance").  At the end of each month, we multiply the Previous Loan Balance by  he then-current ANNUAL PERCENTAGE RATE divided by 12 ( he "Monthly Periodic Rate").

At the end of each month in which any advances (also known as disbursements and labeled as "Disb" on  this statement) or payments have been made to you or on your behalf, we multiply the amount of the advance or payment by the number of days remaining in the month after that advance or payment was made (not including the day the advance was made) and then multiply this amount by the then-current ANNUAL PERCENTAGE RATE divided by 365 (the "Daily Periodic Rate").  This calculation is repeated for each advance or payment made to you or on your behalf during the month.

The sum of the final result of these calculations equals the interest portion of your FINANCE CHARGE for the month.

### D. MORTGAGE INSURANCE PREMIUMS (MIP)
In addition, mortgage insurance premiums ("MIP"), which are a FINANCE CHARGE, are computed by as follows:

At the end of each month, we multiply the lesser of the Previous Loan Balance or the maximum balance on which HUD requires MIP to be paid to it by your MIP rate divided by 12 (the "MIP Monthly Period Rate").  At the end of each month in which any advances (also known as disbursements and labeled as "Disb" on this statement) or payments have been made to you or on your behalf, we multiply the amount of the advance or payment (other than any advance or payment that exceeds the maximum advances or payments on which HUD requires MIP to be paid) by the number of days remaining in the month after that advance or payment was made (not including the day the advance was made), and then multiply this amount by your MIP rate divided by 365 (the "MIP Daily Periodic Rate").  This calculation is repeated for each advance or payment made to you or on your behalf during the month.

The sum of the final result of these calculations equals the mortgage insurance portion of your FINANCE CHARGE for the month.

### E. CALCULATION OF BALANCES
The "Principal Limit Informa ion" section on the front of  he monthly statement shows your "Original Principal Limit" and your "Net Principal Limit" which includes any "Set Asides".  The "Loan Balance" section on page 2 of this monthly statement shows your prior month's Previous Loan Balance and your current month's Closing Loan Balance, which includes the current month's activity. If you would like to determine your payoff balance or if you have any questions on this monthly statement, please call the telephone number listed on the bottom of this monthly statement.

### F. OTHER INFORMATION
We compute the interest and other fees assessed on your loan monthly.  This information is available on page 2 of this monthly statement each mon h.  This monthly statement indicates both the current month and year to date interest and other fees.  If you repay all or a portion of your loan balance and the annual interest paid due to a repayment exceeds $600, a separate IRS Form 1098 will be mailed to you by January 31st. Interest accrued on this loan, other than repayments, will not be reported to the IRS until the loan is paid in full.

### G. BILLING RIGHTS SUMMARY
In case of errors or questions about your loan monthly statement, you will need to contact us as follows:

If you think your monthly statement is wrong or you need more information about a transaction on your monthly statement, write us at Reverse Mortgage Service Center, Attn: Billing Department, P.O. Box 24606, West Palm Beach, FL 33416.  Write to us as soon as possible.  We must hear from you no later than 60 days after we send you the FIRST monthly statement on which the error or problem appeared.  You can telephone us, but doing so will not preserve your rights.  In your letter, give us the following information:
1. Your name and loan number
2. The dollar amount of the suspected error
3. Describe the suspected error and explain, if you can, why you believe there is an error

Loan Skey
Rep. Skey:

P.O. Box 24606, West Palm Beach, FL 33416
Phone (866) 503-5559 ~ FAX (561) 682-8644 ~ TRS 711
Email customerassist@phhreverse.com

Page 3 of 4



**MORTGAGE**

P.O. Box 24606
West Palm Beach, FL 33416

Statement Date: October 02, 2023
Month Ending:    September 30, 2023

We will acknowledge your letter within 30 days.  Within 90 days, we will either correct the error or explain why we believe the monthly statement was correct.  If we determine the monthly statement was not correct, we will credit the disputed amount along with any associated interest charges.  While under investigation, you will continue to see the disputed amount on your monthly statement; however, you do not have to pay any disputed amount or the interest charges that apply to it.  Even though payments are not required on a reverse mortgage, by law, you are still required to meet all obligations as outlined in your Notes, Security Instruments and Loan Agreement.  This includes paying your property taxes and insurance premiums.

**H. CREDIT INFORMATION**
Regular monthly installment payments are not required on this loan unless you have a repayment plan for a delinquent account. However, you have the obligation to pay your property taxes and insurance premiums. The loan must be repaid in full in one payment if your loan has been called "Due and Payable". Payments may be made by check, money order or wired funds, payable in U.S. Dollars. Do not send cash. Payments must be mailed to the address listed on the bottom of this monthly statement. Payments are allocated as described in your Note.

P.O. Box 24606, West Palm Beach, FL 33416
Phone (866) 503-5559 ~ FAX (561) 682-8644 ~ TRS 711
Email customerassist@phhreverse.com

Page 4 of 4



ReverseQuest    ☰    Figures Bot

**Loan Information**

| | | | |
|---|---|---|---|
| Loan Skey: | Loan Status: | | Investor Loan #: |
| | Bnk/Fcl | Product Type: | |
| | Loan Sub-Status: | HECM Standard | Ginnie Mae #: |
| Borrower: | Bnk/Fcl - Chapt. 13 | Pay Plan: | Monthly Payment: |
| SUZANNE G PAPARO | Phone (Home): | Line of Credit | $0.00 |
| Property Address: | (999) 999-9999 | | |
| 228 HAWTHORNE ROAD, MORTON, PA 19070 | | | |

**Servicing Information**

| | |
|---|---|
| Servicer Name: | PHH Mortgage Services |
| Investor Name: | Cascade Funding Mortgage Trust - HB11 |
| Investor Pool: | Cascade Funding - 2023 HB11 |

**Balance Information**

| | |
|---|---|
| Loan Balance: | $273,418.13 |
| Max Claim: | $247,000.00 |
| % of Max Claim: | 110.7% |
| Total Funds Available: | ($32,510.65) |

## Balance Details

[Edit]

### Principal Limit Calculation

| | |
|---|---|
| Orig. Principal Limit: | $156,351.00 |
| Current Principal Limit: | $245,325.13 |
| Principal Balance: | $204,581.07 |
| Interest Balance: | $66,082.76 |
| MIP Balance: | $2,154.30 |
| Service Fee Balance: | $600.00 |
| - Loan Balance: ⌃ Less | $273,418.13 |
| - Service Fee Set-Aside: | $4,417.65 |
| - Repair Set-Aside: | $0.00 |
| - First Year Set-Aside: | $0.00 |
| - Credit Line Set-Aside: | $0.00 |
| - Life Expectancy Set-Aside: | $0.00 |
| ★=Net Principal Limit: | ($32,510.65) |

### Life Expectancy Set-Aside

| | |
|---|---|
| LESA Type: | Not Required |
| LESA Payment Status: | LESA-Active Payments |
| Semi-Annual Payment: | $0.00 |

### Loan Balance Distribution



Prin Bal    Int Bal    MIP    SF Bal

### Other Balances

| | |
|---|---|
| Tax & Ins. Withheld: | $0.00 |
| IMIP Paid By Borrower: | $0.00 |
| IMIP Paid By Lender: | $0.00 |

### Pay Plan Information

| | |
|---|---|
| Pay Plan Type: | Line of Credit |
| Payment Status: | Payment Suspended |
| Monthly Payment: | $0.00 |
| Monthly Tax & Ins. Withheld: | $0.00 |
| Net Monthly Payment: | $0.00 |
| # of Remaining Payments: | 0 |
| Maximum Claim: | $247,000.00 |
| Monthly Service Fee: | $30.00 |
| Print Statements: | ✓ |
| Prohibit All Correspondence: | |

### Credit Line Information

| | |
|---|---|
| Current Net Credit Line: | $0.00 |

★ Net Principal Limit = Current Principal Limit - Loan Balance - Set Asides

Copyright © 2023 ReverseQuest® All rights reserved.

Version 4.6:P05

☰ Figures Bot

| Navigation |
|---|
| Dashboard |
| **Loan** |
| back to Loan Search |
| Alerts |
| Audit Tracking |
| Balance |
| Bankruptcy Details |
| Change of Plan |
| Claim Details |
| Compliance Details |
| Contacts |
| Curtailment Meter |
| Default Details |
| Disbursements |
| Documents |
| Foreclosure Details |
| Loan Transactions |
| Monthly Statements |
| Notes |
| Payoff |
| Property |
| Rates & Dates |
| Remittance |
| Summary |
| Compliance |
| Default |
| Foreclosure |
| Bankruptcy |

## Loan Information

| Field | Value |
|---|---|
| Loan Status: | BNK/FCL |
| Loan Sub-Status: | Bnk/Fcl - Chapt. 13 |
| Product Type: | HECM Standard |
| Ginnie Mae #: | |
| Borrower: | SUZANNE G PAPARO |
| Phone (Home): | (999) 999-9999 |
| Pay Plan: | Line of Credit |
| Monthly Payment: | $0.00 |
| Property Address: | 228 HAWTHORNE ROAD, MORTON, PA 19070 |

### Servicing Information
| Field | Value |
|---|---|
| Servicer Name: | PHH Mortgage Services |
| Investor Name: | Cascade Funding Mortgage Trust - HB11 |
| Investor Pool: | Cascade Funding - 2023 HB11 |

### Balance Information
| Field | Value |
|---|---|
| Loan Balance: | $273,418.13 |
| Max Claim: | $247,000.00 |
| % of Max Claim: | 110.7% |
| Total Funds Available: | ($32,510.65) |

## Loan Summary

### Default:
| Field | Value |
|---|---|
| Default Reason: | Unpaid Taxes |
| Due & Payable Date: | 1/6/2020 |
| Notice Sent to Borrower: | 1/9/2020 ✓ |
| Death Date: | |
| Servicer Notified of Death: | |
| Notice of Default to HUD: | 1/6/2020 ✓ |
| Title Ordered: | Missed ⚠ |
| Title Received: | |
| Appraisal Ordered: | 1/8/2020 ✓ |
| Appraisal Effective Date: | 1/13/2020 |
| Appraisal Received: | 1/19/2020 ⚠ |
| Inspection Ordered: | 1/6/2020 ✓ |
| Inspection Received: | |
| Property Location Type: | |
| Auto 90-Day Extension: | No |
| Total # of Approved Extensions: | 1 |
| Due & Payable Loan Balance: | $220,733.73 |
| Extension Expiration: | 7/24/2022 |

### Foreclosure/Loss Mitigation:
| Field | Value |
|---|---|
| Referred to Counsel: | 8/9/2021 ✓ |
| First Legal Due Date: | 1/27/2022 |
| First Legal Filed Date: | 1/24/2022 ✓ |
| HUD Notice of Initiation of FCL: | 2/4/2022 ✓ |
| Appraisal Ordered: | 5/24/2023 ✓ |
| Appraisal Effective Date: | 5/30/2023 |
| Appraisal Received: | 6/6/2023 ✓ |
| Liquidation Event: | |
| Sale Date: | Missed ⚠ |
| Property Sold To: | |
| Deed Recorded Date: | |
| Data Gram Completed: | |
| Referred to REO: | |

### Bankruptcy:
| Field | Value |
|---|---|
| # of Days in Bankruptcy: | 75 |
| # of Bankruptcies: | 1 |
| Bankruptcy Type: | Bankruptcy - Chapter 13 |
| Bankruptcy Filed Date: | 8/16/2023 ✓ |
| Bankruptcy Discharged Date: | |

### REO
| Field | Value |
|---|---|
| Marketable Title: | |
| REO Sale Date: | |
| REO Sale Price: | $0.00 |
| REO Net Proceeds: | $0.00 |
| Referred to Claims: | |

### Tax and Insurance
| Field | Value |
|---|---|
| Original Transfer Property Charge: | $20,769.88 |
| Transfer Property Charge Balance: | $20,769.88 |
| Prop Charge Pre D&P Balance: | $0.00 |
| Corp Adv 305 Flood Ins Balance: | $0.00 |
| Corp Adv 305 Hazard Ins Balance: | $0.00 |
| Corp Adv 305 Taxes Balance: | $21,438.20 |
| Corp Adv 305 Ground Rent Balance: | $0.00 |
| Corp Adv 305 HOA Balance: | $0.00 |
| TOTS Balance: | $42,208.08 |
| Active Repayment Plan: | No |
| Payment Status: | N/A |
| # Repayments Made: | N/A |
| # Repayments Remaining: | N/A |

★ All date fields represent the completion date of their corresponding tasks.

Copyright © 2023 ReverseQuest® All rights reserved.

Version 4.6:P05

# EXHIBIT "F"

# PHH Mortgage Services

**MORTGAGE**    Internal Payoff Statement

Data Update Date: 10/29/2023

| | |
|---|---|
| Loan Skey: | |
| Loan Number: | |
| Borrower Last Name: | PAPARO |
| Property Address | 228 HAWTHORNE ROAD, MORTON, PA 19070 |

| | |
|---|---|
| As of Date: | 10/30/2023 |
| Good through Date: | 10/30/2023 |
| Principal Advances: | $ 204,581.07 |
| Interest: | $ 66,082.76 |
| Interest Rate Type | Monthly (1-Yr CMT) |
| Current Interest Rate | 6.89 |
| MIP: | $ 2,154.30 |
| MIP Rate | 0.50 |
| Servicing Fees: | $ 600.00 |
| Corporate Advances: | $ 27,684.53 |
| Intra Month Per Diem Total: | $ 1,660.73 |
| Total Amount Due: | $ 302,763.39 |
| Per Diem Post Good Through Date** | 61.59 |

*NOTE: this is a not an external payoff and should not be relied upon if the loan is to be paid in full

**per diem is as of the date generated. Any advances incurred between the as of date and the good through date will increase per diem and will not be included here.

**EXHIBIT "G"**

| Fill in this information to identify your case and this filing: |
| --- |

| Debtor 1 | **SUZANNE G PAPARO** | | |
| --- | --- | --- | --- |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF PENNSYLVANIA | | |
| Case number | | | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.

   ■ Yes.  Where is the property?

| 1.1 | | |
| --- | --- | --- |

**228 HAWTHORNE RD**
Street address, if available, or other description

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Morton | PA | 19070-0000 |
| --- | --- | --- |
| City | State | Z P Code |

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$350,000.00** | **$350,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Delaware**
County

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her

☐ **Check if this is community property**
(see instructions)

Other information you wish to add about this item, such as local property identification number:

2.  **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.............................................................................=>**

| **$350,000.00** |
| --- |

**Part 2:   Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*